IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| DANIEL MIKE CHAVEZ, | Civ. No. 1:11-cv-03025-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| DAVID R. ROBINSON; LISA MOORE, | |
| Defendants. | |

AIKEN, District Judge.

On April 16, 2018, this Court dismissed Plaintiff's First Amended Complaint with leave to amend. ECF No. 68. Plaintiff timely filed a Second Amended Complaint, ECF No. 69, and this matter comes before the Court on separate Motions to Dismiss filed by Defendant David R. Robinson and Defendant Lisa Moore. ECF Nos. 74, 75. The Court has determined that this case is appropriate for resolution without oral argument.[1] For the reasons set forth below, the motions are GRANTED and this case is DISMISSED.

## BACKGROUND

The convoluted history of this case was set forth at some length in this Court's Opinion and Order on the Motions to Dismiss the First Amended Complaint, ECF No. 68, and will not be fully reproduced here.

---

[1] The Court wishes to take this opportunity to once again thank Mr. James F. Halley for agreeing to accept pro bono appointment as counsel for Plaintiff. Pro bono appointment is a difficult burden and Mr. Halley has diligently and ably represented Plaintiff in this case.

Page 1 – OPINION & ORDER

As alleged in the Second Amended Complaint ("SAC"), Plaintiff Daniel Mike Chavez ("Chavez") was convicted of two counts of Attempted Sex Abuse in the First Degree and two counts of Private Indecency following a jury trial in the Klamath County Circuit Court on March 20, 2009.[2] The state court sentenced Chavez to sixty months of probation on the first count of Attempted Sex Abuse and to eighteen months in prison, followed by sixty months of post-prison supervision ("PPS") on the second count of Attempted Sex Abuse. Chavez received a concurrent sentence of thirty days in jail for the two counts of Private Indecency.

Chavez appealed both his conviction and his sentence, but his appeal remained pending when he completed his prison term and returned to Klamath County. Upon his release from prison, Chavez commenced his term of PPS. Defendant Lisa Moore ("Moore") was assigned as Chavez's probation officer.

As a condition of his probation and PPS, Chavez was required to participate in a sex offender treatment program.[3] Moore directed Chavez to attend treatment sessions provided by Defendant David Robinson ("Robinson") through his company, Correctional Evaluation and Treatment, Inc. ("CET").

Chavez began treatment with CET in June 2010. Before treatment began, Chavez was presented with a number of "mandatory admittance" forms. These forms required, among other things, that Chavez admit to the conduct underlying his convictions. Chavez was also directed to sign a "release of information" form, which permitted Robinson to share with Moore any information disclosed by Chavez during treatment.

Chavez was concerned that admiting to the offense conduct would prejudice his pending appeal and asked to speak to an attorney. Robinson told Chavez that the admission and the

---

[2] *State v. Chavez*, Klamath County Circuit Court Case No. 080999CR.
[3] Sex offender treatment was a mandatory condition of Chavez's sentence pursuant to ORS 144.102(4)(b)(F).

release of information were required by the program. Chavez refused to sign the documents. Robinson discharged Chavez from the program and notified Moore.

Moore initiated PPS sanction proceedings against Chavez. Chavez was found to be in violation of the sex offender treatment requirement of his PPS and was given a jail sanction.

In August 2010 Chavez was once again directed to attend sex offender treatment with CET. Robinson presented Chavez with the mandatory admission and release of information documents and Chavez once again refused to sign. Robinson terminated Chavez from the program and notified Moore. Moore initiated a second round of PPS sanction proceedings against Chavez. Chavez was found to be in violation of the sex offender treatment condition of his PPS and a second jail sanction was imposed against him.

Although the SAC does not expressly discuss it, the record shows that Chavez's appellate counsel sought an order from the state court staying imposition of sex offender treatment pending resolution of Chavez's appeal on August 11, 2010. *See* Opinion & Order 4, n.2, ECF No. 68; *Chavez v. Robinson*, Ninth Circuit Case No. 14-35384, Dkt. No. 23. On September 1, 2010, the state court issued an order granting Chavez immunity for any statements made during sex offender treatment concerning the conduct underlying his convictions. *Id.*

On March 9, 2011, Chavez filed this federal civil rights action against Moore and Robinson. ECF No. 1. On March 10, 2011, Chavez once again attended sex offender treatment with CET. *See* Violation and Structured Sanction Reporting Form, ECF No. 7-1. Despite the state court's grant of immunity, Chavez again refused to participate in treatment. Chavez also informed Robinson that he had filed this federal lawsuit against him. Robinson regarded the situation as an "ethical dilemma" and determined that he could "no longer provide direct therapeutic service to Mr. Chavez as he has decided to take legal action against me." *Id.*

Robinson also reported that Chavez "has made it clear that he does not intend to cooperate with sexual offender specific treatment while attending my program." *Id.* In his final report, Robinson told Moore:

> In closing, I will no longer allow Mr. Chavez to return to participate in this treatment program as he has filed for an appeal of his original conviction supporting his denial of sexual offense behavior; and, he has delivered upon me a certified mail document indicating his intent to file a "Civil Complaint with Damages" against me and anyone else he can. In my last meeting with Mr. Chavez, he was dismissed from the interview room as uncooperative and advised that he could discuss his termination from sexual offender treatment with you.

Violation and Structured Sanction Reporting Form, ECF No. 7-1.

On March 22, 2011, Moore once again initiated PPS sanction proceedings and Chavez was jailed for a third time for failure to participate in sex offender treatment.

On February 15, 2012, the Oregon Court of Appeals reversed Chavez's conviction based on the state's concession of error and remanded the case to the Klamath County Circuit Court.[4] *State v. Chavez*, 248 Or. App. 260 (2012). On remand, Chavez accepted a plea agreement by which he agreed to enter a plea of no contest to a single count of Attempted Sex Abuse in the First Degree. Naumes Decl. Ex. 2, ECF No. 51-1. The state agreed to dismiss the remaining counts and to recommend a sentence of time served with a requirement that Chavez register as a sex offender. *Id.* On February 13, 2014, the state court accepted Chavez's plea and judgment was entered accordingly. Naumes Decl. Ex. 1.

## LEGAL STANDARD

Where a plaintiff "fail[s] to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). In order to state a viable claim, a plaintiff

---

[4] The Oregon Court of Appeals determined that the trial court had erred "in admitting, in the absence of physical evidence, a physician's diagnosis that it was 'highly likely' that the complainant had been sexually abused." *State v. Chavez*, 248 Or. App. 260, 261 (2012). The court declined to reach Chavez's challenge to the scientific foundation of the state's evidence of grooming and "reject[ed] without discussion" all other assignments of error. *Id.*

Page 4 – OPINION & ORDER

must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). The complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

For purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

## DISCUSSION

Chavez brings three claims against Robinson and Moore pursuant to 42 U.S.C. § 1983: (1) a claim for violation of his Sixth Amendment right to counsel; (2) a claim for violation of his Fifth Amendment right to be free from self-incrimination; and (3) a claim for retaliation based on the exercise of his First Amendment rights.[5]

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation

---

[5] The First, Fifth, and Sixth Amendment have, for purposes of the claims in this case, been made applicable to the states by the Fourteenth Amendment. *See, e.g., Pointer v. Texas*, 380 U.S. 400, 401 (1965) (Sixth Amendment right to counsel); *Estelle v. Smith*, 451 U.S. 454, 462 (1981) (Fifth Amendment protection against self-incrimination); *New York Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964) (Fourteenth Amendment binds the states to the requirements of the First Amendment). Chavez has properly invoked the Fourteenth Amendment in bringing his claims in this case.

was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

I.     **State Actor Requirement**

Robinson moves to dismiss all claims against him because, as a private therapist providing sex offender treatment, he is not a state actor.

As previously noted, a claim under § 1983 requires that the deprivation be committed by a person acting under color of state law. *Anderson*, 451 F.3d at 1067. There is a "presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). A private individual may act under color of state law when (1) providing a public function; (2) engaging in joint action with the state to deprive an individual of his constitutional rights; (2) acting under government compulsion; or (4) acting with such a close nexus with the state that the private behavior may be fairly treated as that of the state. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

With respect to the "public function" formulation, courts within this District have held that "[p]roviding sex therapy treatment to former inmates is not an inherently public function because it is not constitutionally-mandated healthcare." *York v. Carpenter*, No. 6:16-cv-00320-MO, 2017 WL 1290496, at *4 (D. Or. Jan. 27, 2017); *see also Lovelace v. Oregon*, No. CV 08-3107-PA, 2009 WL 2450298, at *6 (D. Or. Aug. 10, 2009) ("Plaintiff has not shown sufficient cooperation between Milligan and parole officials to justify treating Milligan as a state actor. Nor has plaintiff shown that Milligan was performing a government function in providing sex offender treatment and reporting to parole officials on the progress of treatment."). There is no allegation that Robinson acted under government compulsion, nor is there any clear allegation

that his acts had such a close nexus with the state that they might fairly be treated as acts of the state.

Rather, it appears that Chavez relies upon the allegation that Robinson engaged in joint action with Moore in order to deprive Chavez of his rights. The joint action test is met where private persons are "willful participants in joint activity with the state or its agents that effects a constitutional deprivation." *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997) (internal quotation marks and citation omitted). In assessing claims of joint action, courts "consider whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Florer v. Congregation Pidyon Shevuyim, N.A,*, 639 F.3d 916, 926 (9th Cir. 2011) (internal quotation marks and citation omitted). "This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." *Id.*

Upon review of the SAC and the record, the Court concludes that it would be premature to dismiss the claims against Robinson on the basis that he was not state actor under the "joint action" formulation. Although Robinson relies heavily on the factually-similar *York* decision, the Court notes that *York* was decided on a motion for summary judgment and its conclusions turned on a lack of evidence, rather than a deficiency of pleading. *York*, 2017 WL 1290496, at *4 ("Mr. York has not provided evidence to support these allegations . . . Thus, there is no evidence to support a finding that the state and Ms. Encinas engaged in joint action to deprive Mr. York of his constitutional rights."). Although it seems likely that, as in *York*, the full record would reveal no joint action between Robinson and Moore, the Court is required to accept the allegations in the SAC as true. For the limited purposes of this motion to dismiss, therefore, the Court will assume that Robinson was a state actor as alleged in the SAC.

## II. Chavez's Sixth Amendment Claim

The SAC alleges that Defendants violated Chavez's Sixth Amendment right to counsel by retaliating against Chavez "for asserting his right to speak with a lawyer in June, 2010 before responding to the demand that he admit disputed allegations that were then pending on appeal." SAC 4.

The Sixth Amendment provides, *inter alia*, that "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The Supreme Court has held, however, that the Sixth Amendment right to counsel is "limited by its terms." *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 198 (2008). There is no support for Chavez's suggestion that the Sixth Amendment's right to counsel extends to sex offender treatment sessions as part of a "criminal prosecution." *See, e.g., Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right and no further.").

To the extent that Chavez connects his Sixth Amendment claim to the PPS sanctions proceedings, the claim must also fail. The revocation of parole is remedial, rather than punitive and "[i]t is well established that parole revocation is not part of a criminal proceeding." *Standlee v. Rhay*, 557 F.2d 1303, 1306 (9th Cir. 1977). As a consequence, "the full panoply of rights due a defendant in such a [criminal prosecution] proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). "Revocation proceedings implicate fewer rights because revocation is not new punishment for a new crime," but are instead "part of the whole matrix of punishment which arises out of a defendant's original crime, of which the defendant has already been convicted after a trial subject to the full panoply of constitutional guarantees." *United States v. Hulen*, 879 F.3d 1015, 1019 (9th Cir. 2018) (internal quotation

marks and citations omitted). Instead, "revocation proceedings require only basic due process rather than the full protection of the Sixth Amendment." *Id.*

In this case, Chavez was subjected to sanctions for violation of the terms of his parole. Those PPS sanction proceedings were not "criminal prosecutions" and therefore did not implicate Chavez's Sixth Amendment rights.[6] Defendants' motions are therefore GRANTED and Chavez's Sixth Amendment claim is DISMISSED.

### III. Chavez's Fifth Amendment Claim

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The right exists to protect individuals from being subjected to the "cruel trilemma of self-accusation, perjury, or contempt." *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (internal quotation marks and citation omitted). A Fifth Amendment claim is, however, subject to substantially different analyses, depending on whether it is considered in the civil or the criminal context. *United States v. Antelope*, 395 F.3d 1128, 1140-41 (9th Cir. 2005). When the right is invoked in the criminal context, such as in a motion to suppress, a defendant must show that "(1) the testimony desired by the government carried the risk of incrimination; and (2) that the penalty he suffered amounted to compulsion." *Id.* at 1134 (internal citations omitted).

If this were a criminal case in which the prosecution was attempting to admit or rely on statements coerced from Chavez, the Court's analysis would follow the elements laid out above. But, as the Ninth Circuit observed in *Antelope*, courts must be alive to the "simple principle that

---

[6] In his Response, Chavez appears to argue that his Sixth Amendment right to counsel was denied with respect to his direct appeal. That argument is not supported by the record. Chavez was represented on appeal by Zachary Lovett Mazer of the Oregon Office of Public Defense Services Appellate Division. It was Mazer, acting as counsel for Chavez, who filed a motion seeking a stay of imposition of sex offender treatment pending resolution of Chavez's appeal. ECF No. 2-1. Mazer also prepared the state court order granting Chavez immunity for statements made in the course of sex offender treatment and signed it on behalf of Chavez. *Chavez v. Robinson*, Ninth Circuit Case No. 14-35384, Dkt. No. 23. On this record, it is clear that Chavez was not deprived of counsel in pursuing his direct appeal.

Page 9 – OPINION & ORDER

the scope of the Fifth Amendment's efficacy is narrower when used as a sword in a civil suit than when used as a shield against criminal prosecution." *Id.* at 1141. In order to state a civil claim under the Fifth Amendment, a plaintiff must show that the authorities somehow coerced or compelled him into making an incriminating statement and then used that statement against him in a criminal case. *See Chavez*, 538 U.S. at 763-67 (plurality decision rejecting a Fifth Amendment claim under § 1983 because, although the police had coerced the plaintiff into making incriminating statements, no criminal action was ever brought against him); *see also Stoot v. City of Everett*, 582 F.3d 910, 924-27 (9th Cir. 2009) (finding that a Fifth Amendment claim had ripened when a coerced confession was used to initiate and maintain a criminal case against the plaintiff); *Farmer v. Youhas*, 525 F. App'x 547, 548 (9th Cir. 2013) (finding no Fifth Amendment claim when the plaintiff's incriminating statements were not used against him in a criminal proceeding); *Ferry v. Doohan*, Case No. 3:18-cv-00153-AC, 2018 WL 1173425, at *5 (D. Or. Mar. 6, 2018) ("[I]n the absence of criminal prosecution, Plaintiff cannot obtain damages under § 1983 for the alleged violation of his Fifth Amendment self-incrimination rights because no criminal charges have been pursued against him.").

In dismissing the FAC, this Court observed that there was no allegation or evidence that Chavez made an incriminating statement or that any statement was used against him in a separate criminal proceeding. As the Supreme Court held in *Chavez*, "mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness." *Chavez*, 538 U.S. at 769. Although Chavez urges the Court to reconsider its reasoning based on the fact that Chavez had a pending appeal at the time of the sanctions, the Court finds no cause to disturb its prior decision.

The SAC suffers the same fundamental defect as the FAC with respect to the Fifth Amendment claim: Chavez did not make any incriminating statements and, as a consequence, no such coerced statements were used to initiate or maintain a criminal proceeding against him.[7] Consistent with *Chavez* and *Stoot*, such a showing is essential to sustain a claim for damages for violation of the Fifth Amendment's Self-Incrimination Clause. Accordingly, Chavez's Fifth Amendment claim for violation of his right to be free from self-incrimination is DISMISSED.

## IV. Chavez's First Amendment Claim

Finally, Chavez asserts that Moore and Robinson retaliated against him for filing the present action in violation of Chavez's First Amendment right to petition the government for redress of grievances.

A claim for First Amendment retaliation in the prisoner context entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct and that such action (4) chilled the prisoner's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

In this case, the fifth element of the claim proves dispositive. The Ninth Circuit has held that courts should "afford appropriate deference and flexibility" to officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory. *Pratt v. Rowland*, 65 F.3d 802, 806-07 (9th Cir. 1995) (internal quotation marks and citations omitted). The

---

[7] As the Court observed in its prior Opinion and Order, the fact that Chavez refusal to make the incriminating statements was used against him in probation or post-prison supervision proceedings will not suffice to sustain a Fifth Amendment claim under § 1983. Opinion & Order, at 11 n.7, ECF No. 68. Both the Supreme Court and the Ninth Circuit have held that probation and supervised release revocations are not "criminal cases" within the meaning of the Fifth Amendment. *Minnesota v. Murphy*, 465 U.S. 420, 435 n.7 (1984); *United States v. Hulen*, 879 F.3d 1015, 1019-20 (9th Cir. 2018). Rather, they are considered part of the matrix of punishment imposed pursuant to the original conviction. *Hullen*, 876 F.3d at 1020; *Ferry v. Doohan*, Case No. 3:18-cv-00153-AC, 2018 WL 1173425, at *4 (D. Or. Mar. 6, 2018).

plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the challenged conduct. *Id.* at 806.

Here, the record shows that Chavez was ejected from the treatment program because (1) he had sued Robinson and (2) he continued to refuse to participate in treatment, despite the state court's grant of immunity. Violation and Structured Sanction Reporting Form, ECF No. 7-1. Moore then sanctioned Chavez for his failure to participate in treatment.

Oregon requires individuals convicted of sex offenses to participate in sex offender treatment. ORS 144.102(4)(b)(F). This requirement was reflected in Chavez's original judgment of conviction. Halley Decl. Ex. 3, at 2. ECF No. 60. In *McKune v. Lile*, 536 U.S. 24 (2002), the Supreme Court held that sex offender treatment is a legitimate penological interest, considered vital to rehabilitation. *Id.* at 32-36; *see also Antelope*, 395 F.3d at 1137-38 (noting, in the criminal context, the rehabilitative purpose of requiring offenders undergoing treatment to admit past misconduct).

In light of *McKune*, the Court concludes that compelling participation in sex offender treatment is a legitimate correctional goal. Chavez does not dispute that he refused to participate in the treatment program, even after the state court granted him immunity. Chavez's ejection from the program and subsequent sanctions were reasonably related to advancing the legitimate correctional purpose of rehabilitative treatment. As Chavez has failed to plead the absence of a legitimate correctional goal for the challenged conduct, Defendants' motions to dismiss are GRANTED.

### V. Qualified Immunity

A defendant is entitled to qualified immunity if his or her conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis requires a court to address two questions: (1) whether the facts alleged or shown by the plaintiff establish a constitutional violation and (2) whether the right at issue was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The right must have been clearly established at the time of the defendant's alleged misconduct, so that a reasonable official would have understood that, under the circumstance, what he or she was doing violated that right. *Wilson v. Layne,* 526 U.S. 603, 615 (1999). Courts have discretion in deciding which prong to address first, depending on the circumstances of the case. *Pearson v. Callahan*, 555 U.S. 223, 242-43 (2009).

The Supreme Court has repeatedly admonished courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, ___U.S.___, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (internal quotation marks and citation omitted, emphasis in original).

Even if a right is clearly established, qualified immunity protects an official from reasonable mistakes about the legality of his actions. *Wilkins v. City of Oakland*, 350 F.3d 949, 954-55 (9th Cir. 2003). The official is still entitled to qualified immunity if the official "could have believed, 'reasonably but mistakenly . . . that his or her conduct did not violate a clearly established constitutional right.'" *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006) (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

*Pearson*, 555 U.S. at 231 (internal quotation marks and citation omitted). Qualified immunity is meant to protect "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks and citation omitted).

The Court has already determined that Chavez has not sufficiently alleged a constitutional violation. Even assuming the existence of a violation, however, the Court concludes that Moore and Robinson are entitled to the benefit of qualified immunity.[8] At the time of the sanctions, it was not clearly established that participants in a mandatory sex offender treatment program are entitled to counsel under the Sixth Amendment. Similarly, it is was not clearly established that a supervised person's Fifth Amendment rights are violated when they are required to admit the conduct underlying their conviction as part of mandatory sex offender treatment. Finally, it was not clearly established that the filing of a federal lawsuit prevents treatment providers from terminating individuals who refuse to participate in treatment. Nor was it clearly established that probation officers could not sanction non-compliant individuals, notwithstanding the filing of a federal lawsuit. The Court therefore concludes that Moore and Robinson are entitled to the benefit of qualified immunity.

## CONCLUSION

For the reasons set forth above, Defendants' Motions, ECF Nos. 74 and 75, are GRANTED and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this 10th day of December, 2019.

*/s/ Ann Aiken*
Ann Aiken
United States District Judge

---

[8] As previously discussed, the Court assumes for purposes of this motion that Robinson qualifies as a state actor with respect to Chavez's § 1983 claim.